CITY OF AMES, Iowa, Appellant,

and

Conservative Mortgage Company,
Intervenor, Appellant,

v.

SCHILL BUILDERS, INC. and State
Surety Company, Appellees.

SCHILL BUILDERS, INC., Appellee,

v.

Duane R. HANSON, Mary Hanson, and
Village Development Corporation,
Appellees.

Duane R. HANSON, Mary Hanson, and
Village Development Corporation,
Appellees,

v.

CONSERVATIVE MORTGAGE
COMPANY, Appellant.

CONSERVATIVE MORTGAGE
COMPANY, Appellant,

v.

STATE SURETY COMPANY, Appellee.

STATE SURETY COMPANY, Appellee,

v.

Duane R. HANSON and Frank A.
Schill, Appellees.

No. 61434.

Supreme Court of Iowa.

Jan. 24, 1979.

John R. Klaus, Ames City Atty., for appellant City of Ames.

Donald A. Wine of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant Conservative Mortgage.

L. W. Courter and Kirke C. Quinn of Doran, Doran, Courter & Quinn, Boone, for appellee Schill Builders.

David L. Phipps of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellee State Surety Company.

Louis R. Hockenberg of Wasker, Sullivan & Ward, Des Moines, for appellees Hansons and Village Development.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, HARRIS and ALLBEE, JJ.

UHLENHOPP, Justice.

The question in this appeal is whether plaintiff City of Ames, Iowa, is a real party in interest in a suit on a developer's contract and bond. The case at this stage does not involve the ultimate question of whether the City can recover; it involves only the City's standing to sue.

In exchange for the City's approval of a plat of a tract of land, Schill & Hanson Builders, Inc. agreed in 1970 to construct sewers and other improvements within 12 months and posted a bond issued by State Surety Company as security. The agreement permitted the City to complete the improvements if Schill & Hanson failed to do so. The bond bound Schill & Hanson as principal and State Surety as surety to the City for $83,600. It contained this condition:

> NOW, if the Principal shall in all respects fulfill his said obligation within two years according to the terms of his agreement and shall satisfy all claims and demands incurred for same and shall fully indemnify and save harmless the Obligee from all costs and damages which it may suffer by reason of failure to do so and shall fully reimburse and repay the Obligee all outlays and expenses which it may incur in making good any such default, then this obligation is to be void and of no effect; otherwise to remain in full force and effect.

Schill & Hanson planned to get financing from intervenor Conservative Mortgage Company. Soon after the platting Schill & Hanson conveyed the tract to Village Development Corporation, which Schill & Hanson had previously used to carry out similar projects. Conservative advanced funds on a mortgage on the tract. Shortly afterward Mr. Schill and Mr. Hanson parted ways; Mr. Hanson took Village Development and Mr. Schill took Schill & Hanson which he renamed Schill Builders.

Village Development commenced construction but did not complete the improvements. Eventually Conservative commenced foreclosure. Still later Conservative received a quitclaim deed of the property in lieu of foreclosure.

Conservative thus held the property with partially constructed improvements which Schill & Hanson several years earlier agreed to build completely within a year. In order to get the improvements completed, the City and Conservative worked out the following arrangement. The City undertook completion of the improvements. Conservative advanced funds to the City to do so. The City agreed to pursue its legal remedies to recover from Schill Builders, successor to Schill & Hanson, and from State Surety on the bond, and to repay Conservative from the funds recovered.

The improvements were completed after the City filed suit against Schill Builders

and State Surety. Conservative intervened in the suit, joining forces with the City. Defendants filed cross-claims and brought in new parties; the litigation became quite complex.

After trial, the trial court held that the City was not the real party in interest and dismissed the case. The City and Conservative appealed.

Rule 2 of the Rules of Civil Procedure states:

> Every action must be prosecuted in the name of the real party in interest. But an executor, administrator, guardian, trustee of an express trust; or a party with whom or in whose name a contract is made for another's benefit, or a party specially authorized by statute, may sue in his own name without joining the party for whose benefit the action is prosecuted.

The City and Conservative claim that under rule 2 the City can sue in its own name because the City is "a party with whom or in whose name a contract is made for another's benefit" and also because the City is "a party specially authorized by statute".

I. Is the City "a party with whom or in whose name a contract is made for another's benefit"?

We believe that the City is entitled to bring suit in its own name because it entered into a contract for another's benefit. This conclusion is dictated by *Sioux City v. Western Asphalt Paving Corp.*, 223 Iowa 279, 271 N.W. 624. In that case Sioux City sued a contractor and a surety for damages caused by the contractor's failure to comply substantially with the provisions of a paving contract. The bond was given for the benefit of Sioux City and all people injured by a breach. The improvements, unlike those in the case at bar, were to be paid for by levying assessments against abutting property. In the case at bar, the improvements were to be paid for by Schill & Hanson in exchange for the City's approval of the plat.

This court determined that Sioux City was not beneficially interested but was nevertheless entitled to bring suit since it was "a party with whom or in whose name a contract is made for the benefit of another." *Sioux City v. Western Asphalt Paving Corp.*, supra, at 288–289, 271 N.W. at 631. Sections 10967 and 10968 of the Code of 1935 were almost identical to present rule 2. This court stated:

> This provision of the statute in substance has been the law in this state since the Revision of 1860, and has been applied by the courts in many instances involving situations analogous to the one with which we are here confronted, and *this court has, quite uniformly, liberally, construed this provision of the statute* in the interests of justice, and in accordance with the underlying principle and spirit and purpose for which it was enacted. In the case of *Cassidy v. Woodward*, 77 Iowa 354, at page 357, 42 N.W. 319, 320, the court said:
>
> "It has uniformly been held by this court that . . . *the party holding the legal title to a cause of action, though he be a mere agent or trustee, with no beneficial interest therein, may sue thereon in his own name. Cottle v. Cole*, 20 Iowa 481; *Rice v. Savery*, 22 Iowa 470; *Pearson v. Cummings*, 28 Iowa 344; *Knadler v. Sharp*, 36 Iowa 232; *Vimont v. Railway Co.*, 64 Iowa 513, 514, 17 N.W. 31, 21 N.W. 9." . . .
>
> This is sustained on the theory that *he who makes a contract may enforce it so long as he retains the legal title to the cause of action based thereon.* (Italics added.)

The breach of the Sioux City contract gave rise to a cause of action against the contractor and surety for damages sustained. This court permitted Sioux City, as agent or quasi-trustee for the owners of the abutting property which was subject to special assessments, to sue in its own name, even though damages recovered would be for the benefit of the property owners.

Here the improvements were only partially completed at the time of the apparent default. The City was entitled to complete the work as the agreement provided, and

the City did in fact arrange to have the work completed. It retained the legal title to the cause of action. We conclude therefore that the City is entitled to sue.

Defendants contend that the Sioux City case is distinguishable. They first argue that the City cannot sue because it does not have a beneficial interest in the cause of action. But the Sioux City decision makes clear that rule 2 permits the pursuit of a cause of action by a party holding legal title to the action although that party does not have a beneficial interest in the suit. *Sioux City v. Western Asphalt Paving Corp.*, supra, at 289, 271 N.W. at 631. See also 1 Vestal & Willson, Iowa Practice, § 12.03 at 185 (1974) ("The test to be applied in determining who is able to bring the action is not a beneficial interest test. Rather it is a test of who has the legal right to bring the action."). The principle is stated thus in 59 Am.Jur.2d Parties § 40 at 398–399:

According to the view of most courts, however, real party in interest provisions, while authorizing one having the beneficial interest in a demand to sue in his own name, are not to be construed as precluding the person who holds the legal title thereto from suing in his own name whenever a judgment in his favor will discharge the defendant in regard to the liability sued upon, even though the amount recovered is for the benefit of another. According to the theory of these courts, the real party in interest is that person who can discharge the claim upon which suit is brought and control the action brought to enforce it, and not necessarily the person ultimately entitled to the benefit of the recovery or the person beneficially interested therein, although in many such cases the real party in interest will also be a person beneficially interested in the cause of action.

And in 67A C.J.S. Parties § 18b at 677:

It makes no difference, moreover, where [plaintiff] holds legal title . . . that another may be entitled as against plaintiff to the fruits of the action . . . . It has also been held immaterial . . . that the vesting of the legal title in plain-

tiff gives him a procedural right which the beneficial owner would not have been able to claim if suit had been brought in his name . . . . .

■ Defendants also contend that the contract was not entered into for the benefit of another, and they endeavor to distinguish the Sioux City case on that basis. Sioux City involved a contract for new improvements in an existing neighborhood, with payment to be made by special assessments. The contract for improvements was entered into for the benefit of those property owners and the suit by Sioux City was for their benefit. In the case at bar, the contract was for new improvements for an undeveloped tract, with payment to be made by Schill & Hanson. Such an agreement is authorized by § 409.5 of the Code:

The council may require the owner of the land to bring all streets to a grade acceptable to the council and may also require the installation of sidewalks, paving, sewers, water, gas, and electric utilities before the plat is approved.

The council or commission may tentatively approve such plat prior to such installation, but any such tentative approval shall be revocable. In lieu of the completion of such improvements and utilities prior to the final approval of the plat, the council or commission may accept a bond with surety to secure to the city the actual construction and installation of such improvements or utilities within a fixed time and according to specifications determined by or in accordance with the regulation of the council or commission. The city is hereby granted the power to enforce such bond by all appropriate legal and equitable remedies.

Here the City was acting on behalf of the public, § 409.14, and in particular for the eventual property owners in the area, as they will be the primary users of the sewers, water mains, and other improvements. Section 409.5 operates to avoid assessing the eventual property owners for these improvements. The City arranges for these improvements at the development stage to avoid the inconvenience and expense which

would accrue to those property owners if the improvements were installed at a later time.

Going a step farther, defendants contend that Conservative, who will be repaid by the City, is not a party for whose benefit the agreement was made because it was not a property owner at the time the agreement was signed. Followed to its logical conclusion this argument would suggest that if the City had completed the improvements and assessed the eventual property owners, the City would not be entitled to sue because the assessed property owners were not property owners at the time of the agreement. Such a result would be contrary to the Sioux City holding.

Defendants also assert that Sioux City is distinguishable because the bond there, unlike the one here, was given for the benefit of the city *and* all persons injured by any breach of the agreement. We do not conclude from this factor that the City is not entitled to bring suit. This distinction may mean that only the City is entitled to sue on the present bond, a question we do not decide. This factor was mentioned in Sioux City to show the city's representative status, but the court did not base its decision on the presence or absence of the factor, nor do we in the present case.

■ Defendants argue further that the absence of an assessment denies the City the right to sue in its own name. At the time of the alleged breach the City had the right under the agreement to make other arrangements for completion of the improvements. If the City desired to complete the improvements prior to the culmination of any legal action, it had several alternatives. It could (1) finance the improvements itself, (2) assess abutting property, or (3) make other arrangements for financing. It chose the latter course. The parties believed that advancement of funds by Conservative would enable the City to finish the improvements quicker and cheaper than assessments. This financing arrangement does not prevent the City from suing, because the purpose of § 409.5 is to allow cities to arrange for improvements without assessing property owners.

Conservative's role in these transactions raises the question of whether it became ultimately responsible to complete the improvements. Defendants do not point to any covenant whereby Conservative promised to make the improvements at its own expense for Schill & Hanson. We do not decide the question of whether Conservative became ultimately responsible for two reasons: the trial court did not find such a covenant, and the question takes us beyond the real party in interest issue and into the ultimate merits of the case. We leave the question open on remand. The bald facts that Conservative received the quitclaim deed in lieu of a foreclosure decree and advanced funds to the City to complete the improvements on the condition of repayment upon recovery do not themselves constitute an assumption by Conservative of Schill & Hanson's contract to make the improvements.

The City is entitled to bring suit under rule 2 on the basis that it entered into a contract for the benefit of others.

II. Is the City "a party specially authorized by statute" under rule 2?

Section 409.5 of the Code provides in part:

> In lieu of the completion of such improvements and utilities prior to the final approval of the plat, the council or commission may accept a bond with surety to secure to the city the actual construction and installation of such improvements or utilities within a fixed time and according to specifications determined by or in accordance with the regulation of the council or commission. *The city is hereby granted the power to enforce such bond by all appropriate legal and equitable remedies.* (Italics added.)

■ This statute also constitutes express authority for the City to bring suit in its own name. Since the agreement permitted the City to have the work completed and sue for damages, the City's suit for damages is clearly authorized. Defendants' argument that the City is not permitted to

sue in its own name because it is not beneficially interested is not well taken for the reasons we have already stated.

III. We liberally construe the real party in interest rule. *Sioux City v. Western Asphalt Paving Corp.*, 223 Iowa 279, 288, 271 N.W. 624, 631. The purpose of such rules "is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Honey v. George Hyman Constr. Co.*, 63 F.R.D. 443, 447 (D.D.C.).

In the case at bar all the individuals and corporations involved in the controversy are before the court. The dispute can be disposed of in one lawsuit. Since Conservative intervened, all claims and defenses against it also may be asserted. As stated in 1 Vestal & Willson, Iowa Practice, §§ 22.07 at 420 (1974):

> [T]he intervenor becomes a party to the litigation in every sense of the word. The judgment can be handed down against the intervenor or in his favor. The intervenor has the right to participate fully in the trial of the lawsuit; he is simply another party to the action.

Our disposition relates only to the City's capacity to bring suit, on which we reverse. The case bristles with unresolved claims, cross-claims, and defenses. We thus return the case for findings, conclusions, and judgment on the merits by the trial court upon the record heretofore made, with such supplemental evidence and argument, if any, as any party may ask the trial court to let it present.

REVERSED AND REMANDED.